# EXHIBIT 1

# AIR CHARTER SERVICES BLANKET PURCHASE AGREEMENT
# # 2020-4151

It is hereby agreed by and between PRIVATE JET SERVICES GROUP, LLC, of 5 Batchelder Road, Seabrook, NH 03874, USA ("PJS") and Twitter, Inc. of 1355 Market St., San Francisco, CA 94103 ("Customer") on behalf of its affiliates and subsidiaries, as follows:

**Term**: This Air Charter Services Blanket Purchase Agreement (this "BPA" or "Agreement") shall become effective when it has been fully executed by the Customer and counter-signed by PJS. Customer may terminate this BPA at any time or for any reason, so long as notice of such termination is in writing; provided that, the Non-Disclosure Agreement by and between PJS and Customer (the "NDA") and both parties' obligations thereunder shall survive any such termination. Upon written notice of cancellation, all flights not yet flown will be cancelled, and PJS will immediately be due any outstanding charges pursuant to this Agreement, including all applicable cancellation fees as set forth within this Agreement, and all other outstanding charges to flights already flown, but not yet paid by Customer. PJS reserves the right to request that Customer execute an "Addendum" to this Agreement to ensure compliance with any changes to pertinent laws and/or regulations or any PJS company policies; provided, that, any such Addendum shall become effective only upon execution thereof by both the Customer and PJS.

**Aircraft Booking**: To book an aircraft, any Designated Representative (as defined below) of the Customer may call PJS at (603) 262-1500 or e-mail Customer's dedicated account team (vippod@pjsgroup.com) with details of each trip and Customer's requirements in connection therewith.

A. Phone or E-mail Confirmation: Any Designated Representative of the Customer may book services over the phone or e-mail. Upon booking, PJS will send to such Designated Representative an e-mail confirmation of the flight details, charges, and cancellation terms (any such confirmation, a "Statement of Work" or "SOW"). **Customer's Designated Representative MUST acknowledge acceptance of the terms set forth in the SOW in writing or via e-mail in order to complete the reservation.**

**Charges & Payments**: The total charge for air transportation for each specific flight identified in a SOW (the "Air Charter Services Price") shall be set forth by PJS in such SOW, and shall be agreed to by the Customer in writing as set forth in the paragraph of this Agreement titled "Phone or Email Confirmation". Payment terms for each flight shall be in accordance with Section 6 of the Standard Terms and Conditions attached hereto as Exhibit C, or as otherwise set forth in any SOW provided. However, in the event of any conflict or inconsistency between such Payment terms and any terms governing payment set forth in any SOW, the terms set forth in such SOW shall control.

B. For each SOW ordered under this BPA, the Air Charter Services Price set forth shall include all Federal Excise Taxes, Passenger Taxes, Passenger Facility Charges, International Departure and Arrival Taxes, and Customs and Immigration Fees, in each case, as applicable. In addition, the Air Charter Services Price shall include standard soft drink and dry snack catering services, unless otherwise specified in the request from the Customer. The Air Charter Services Price does not reflect any exceptional operational charges, including, but not limited to, any fuel surcharge costs or de-icing costs that may be incurred and deemed necessary by the

Pilot in Command. Such additional costs shall be invoiced to Customer and any such undisputed costs shall be payable within forty-five (45) days of Customer's receipt of the applicable invoice, together with any back-up of the invoiced charges requested by Customer.

C. Charges for additional service items explicitly requested by Customer will be estimated in good faith by PJS prior to departure. Customer agrees to prepay such estimated charges prior to departure based on the estimate provided. In the event of any difference between such estimated charges and the actual charges incurred by PJS for such service items, PJS shall promptly invoice or refund Customer for the amount of such difference, as applicable. Customer agrees to pay any undisputed balance due within forty-five (45) days of date of invoice for any outstanding charges.

All payments from Customer shall be made via bank wire transfer to:





Cancellation Policy: PJS' Cancellation Policy is set forth in Section 7 of the Standard Terms and Conditions attached hereto as Exhibit C, and such Cancellation Policy shall apply to all flights booked under this agreement; provided, however, that in the event of any conflict or inconsistency between such Cancellation Policy and any terms governing cancellation set forth in any SOW, the terms set forth in such SOW shall control.

Designated Representative: Exhibit A hereto sets forth the initial agents designated by the Customer to act on the Customer's behalf for the purposes of booking, changing and cancelling flights hereunder (the Customer's "Designated Representatives"). Customer may modify, amend or supplement Exhibit A at any time in order to add, remove or change any Designated Representative(s) upon written notice to PJS.

Notification of Flights: Exhibit B hereto sets forth the parties (if any) designated by the Customer to receive updates and other logistical information and messages regarding the movement, timing and/or positioning of aircraft reserved hereunder and passengers thereon.

**Customer acknowledges and agrees that PJS is acting as an agent for the Customer with the air carrier that will provide the air transportation described in this BPA ("Air Carrier"), and that PJS is neither a direct or indirect air carrier nor a charter operator. Customer's agreement for air transportation shall be with the applicable Air Carrier. Each of Customer and PJS further agree that this BPA is subject to the NDA and the Standard Terms and Conditions attached hereto as Exhibit C. Such Standard Terms and Conditions are incorporated herein by reference, and Customer's execution of this BPA shall evidence Customer's agreement to such Standard Terms and Conditions. This BPA is subject to acceptance by both PJS and by the Air Carrier after execution by Customer. PJS is not responsible for delays, losses or damages of any kind caused, in whole or in part by force majeure, acts of war, terrorism, adverse meteorological conditions, air traffic control delays or other unforeseeable circumstances. The Air Charter Services Price includes taxable and nontaxable items associated with the services provided.**

This BPA, together with the NDA, the Standard Terms and Conditions of Services, and the other Exhibits hereto, constitutes the entire agreement between the parties with respect to the subject matter hereof and thereof, and supersedes and merges all prior discussions, representations, promises and agreements among the parties with respect to such matters, and shall inure to the benefit of and shall be binding upon the parties, their respective successors and permitted assigns. To the extent of any conflict or inconsistency between the NDA, on the one hand, and Agreement, the Standard Terms and Conditions of Services, any of the other Exhibits hereto, and/or any Addendum hereto, on the other hand, the NDA shall govern.

THIS AGREEMENT IN ITS ENTIRETY IS INTENDED AND CONSIDERED TO BE LEGALLY BINDING. ALL INDIVIDUAL FLIGHTS BOOKED AND/OR CANCELLED UNDER THIS BPA ARE HEREBY SUBJECT TO ALL OF THE TERMS AND CONDITIONS STATED HEREIN.

| Customer: Twitter, Inc. | Private Jet Services Group, LLC |
|---|---|
| Authorized Signature: Patrick Geonetta<br>Patrick Geonetta (Jun 24, 2020 09:12 PDT) | Accepted by<br>Greg Raiff (Jun 24, 2020 11:56 EDT) |
| Printed Name: Patrick Geonetta | Printed Name: Greg Raiff |
| Title: VP of Corporate Security | Title: CEO |
| Dated: Jun 24, 2020 | Dated: Jun 24, 2020 |

# *EXHIBIT A*

## *2020-4151*

Designated Representative(s)

a. Designated Representative One:
Name: Jenni Randolph
Email: jrandolph@twitter.com
Business: Twitter
Cell: 425-367-9699

b. Designated Representative Two:
Name: Doug Hunt
Email: dhunt@twitter.com
Business: Twitter
Cell: 925-878-8296

c. Designated Representative Three:
Name: Erich Smith
Email: erich@twitter.com
Business: Twitter
Cell: 650-223-9799

d. Designated Representative Four:
Name: Pat Geonetta
Email: pgeonetta@twitter.com
Business: Twitter
Cell: 703-627-6070

## *EXHIBIT B*

## *2020-4151*

### *Notification of Flights*

a. Party One:
Name: Jenni Randolph
Email: jrandolph@twitter.com
Business: Twitter
Cell: 425-367-9699

b. Party Two:
Name: Doug Hunt
Email: dhunt@twitter.com
Business: Twitter
Cell: 925-878-8296

c. Party Three:
Name: Erich Smith
Email: erich@twitter.com
Business: Twitter
Cell: 650-223-9799

d. Party Four:
Name: Pat Geonetta
Email: pgeonetta@twitter.com
Business: Twitter
Cell: 703-627-6070

# *EXHIBIT C*

## STANDARD TERMS AND CONDITIONS

All air transportation arranged by Private Jet Services Group, LLC ("PJS") on behalf of Customer is subject to the following standard terms and conditions:

1. **Definitions.** Capitalized terms used but not defined in these Standard Terms and Conditions herein have the meanings set forth in the Blanket Purchase Agreement to which these Standard Terms and Conditions are attached as Exhibit C.

2. **Blanket Purchase Agreement.** PJS, in its capacity as an agent for Customer in accordance with the BPA and these Standard Terms and Conditions, shall facilitate Air Carrier's provision of the air transportation as set forth in the BPA, these Standard Terms and Conditions and any standard terms and conditions of the Air Carrier. Customer acknowledges and agrees that any advice or suggestions made by PJS regarding proper travel documentation are made as an accommodation to Customer and that PJS is not responsible for the accuracy of such advice or for the consequences of Customer traveling with improper or insufficient travel documentation.

3. **Amendments and Revisions.** Any amendment, modification, or waiver of, or supplement to, any provision of the BPA, these Standard Terms and Conditions, or any SOW must be agreed upon in writing by both the Customer and PJS to be binding.

4. **Schedule.** Air Carrier will use its commercially reasonable efforts, and the efforts standard in the industry, to comply with the timetable set forth in any SOW and as Customer's schedule requires; provided, however, that departure times and flight routes are subject to, and may be altered by, conditions beyond the reasonable control of Air Carrier, including without limitation, as a result of unscheduled use of aircraft, weather conditions, weather associated factors, FAA directives, air traffic control directives, availability of landing slots, governmental directives, unforeseeable acts and/or events that are beyond the control of the Air Carrier ("Force Majeure"*)*, acts of war, terrorism, mechanicals, or any combination of the factors listed in this paragraph.

5. **Air Charter Services Price.** The Air Charter Services Price shall be set forth by PJS in each SOW, and shall be agreed to by the Customer in writing as set forth in the BPA.

6. **Payment Schedule.** PJS shall invoice Customer within 3 business days upon confirmation of each flight. Payment terms will be forty-five (45) days from the Invoice Date and shall be made via Wire Transfer, to the account stated below. Customer will pay each invoice for undisputed fees, referencing Customer's purchase order number, properly submitted by PJS to email address: apinvoices.us@twitter.com as a .pdf within forty-five (45) days of receipt. Any costs for additional services not included in the Air Charter Services Price shall be estimated by PJS, and the Customer agrees to pre pay for such, prior to the first departure date based on the estimate provided. In the event of any difference between such estimated charges and actual charges incurred by PJS for such service items, PJS shall promptly invoice or refund Customer for the amount of such difference, as applicable. Customer shall pay any outstanding balance within forty-five (45) days of the Invoice Date. If Customer reasonably and in good faith disputes that any portion of any amount claimed by PJS is due, then Customer will timely pay any undisputed portion of the amount and will provide PJS with written notice specifying the disputed amount and the basis for the dispute in reasonable detail. Invoices received more than six (6) months after performance of services will not be paid. All payments shall be made in U.S. Dollars.

*****Notwithstanding the foregoing, in the event of any conflict or inconsistency between the Payment terms set forth in this Section 6 and any terms governing payment set forth in any SOW, the terms set forth in such SOW shall control *****

Wire Transfer- All payments from Customer shall be made via bank wire transfer to





7. **Cancellation.** In the event that after the confirmation by Customer of a charter : **[a]** the Customer elects to cancel the charter contracted for outside of the cancellation terms; **[b]** the charter is canceled by PJS because of Customer's failure to make payment by a due date; **[c]** the charter is canceled by PJS because of Customer's ineligibility for charter transportation under the provisions of applicable Charter Regulations, as defined in Section 12, as reasonably determined by PJS and/or Air Carrier; or **[d]** after providing the Customer the opportunity to cure any non-compliance of applicable Charter Regulations, the charter is canceled by PJS because of Customer's failure to comply with the provisions of applicable Charter Regulations as reasonably determined by PJS and/or Air Carrier; Customer agrees that Customer may be assessed, not as a penalty, but as liquidated damages, such Cancellation Fee as indicated below:

**Domestic Flights:**

- No Cancellation Fee shall be payable by Customer if notice of cancellation is received by PJS at least 72 hours prior to the first departure date listed on the cancelled flight confirmation.
- The Cancellation Fee payable by Customer shall be 50% of the applicable Air Charter Services Price if notice of cancellation is received by PJS between 72 and 48 hours prior to the first departure date listed on the cancelled flight confirmation.
- The Cancellation Fee payable by Customer shall be 100% of the applicable Air Charter Services Price if notice of cancellation is received by PJS 48 hours or less prior to the first departure date listed on the cancelled flight confirmation.
- All one-way flights are subject to a Cancellation Fee equal to 100% of the applicable Air Charter Services Price for such flight.

**International Flights:**

- No Cancellation Fee shall be payable by Customer if notice of cancellation is received by PJS at least 7 days prior to the first departure date listed on the cancelled flight confirmation.
- The Cancellation Fee payable by Customer shall be 50% of the applicable Air Charter Services Price if notice of cancellation is received by PJS between 7 days and 72 hours prior to the first departure date listed on the cancelled flight confirmation.
- The Cancellation Fee payable by Customer shall be 100% of the applicable Air Charter Services Price if notice of cancellation is received by PJS 72 hours or less prior to the first departure date listed on the cancelled flight confirmation.
- All one-way flights are subject to a Cancellation Fee equal to 100% of the applicable Air Charter Services Price for such flight.

*****Notwithstanding the foregoing, in the event of any conflict or inconsistency between the Cancellation Policy set forth in this Section 7 and any terms governing cancellation set forth in any SOW, the terms set forth in such SOW shall control *****

8. **Control.** The Air Carrier and pilot-in-command shall have complete authority and discretion over aircraft, support facilities and all matters concerning the preparation and operation of aircraft including the suitability of the weather and landing areas, the condition of aircraft for flight, landing of aircraft, the manner of flight and all other factors affecting flight safety. In this regard, the pilot-in-command shall have sole discretion to determine whether flights should be rerouted, shortened, delayed, terminated or refused. If PJS, Air Carrier or the pilot-in-command determines that landing facilities at any point on the flight route(s) are not adequate or safe for landing purposes, or if landing is prohibited or restricted by law, regulations, adverse weather or operating conditions, Air Carrier may substitute an alternate airport where adequate and safe facilities are available and landing may be accomplished. In any such event, Air Carrier and PJS shall be deemed to have fulfilled their contractual obligations hereunder as if there were no diversion. PJS and Air Carrier shall have no liability to Customer for delays or cancellation caused by over-flight restrictions or the unavailability of landing slots at any intermediate or final destination.

9. **Availability of Charter.** Air Carrier will make any aircraft chartered pursuant to the BPA available for loading by Customer at a reasonable time prior to departure. In the event on-loading and/or off-loading are not completed as of the scheduled time of departure, and the delay is caused by an act or omission of Customer, Customer agrees to pay reasonable additional charges per hour or per day thereafter, through and including the time of completion of the charter.

10. **Hazardous Substances and Misuse.** Customer shall not transport any contraband or hazardous substances of any type. Customer shall be responsible to Air Carrier and PJS for all damages incurred by reason of the breach of this paragraph. Customer shall be responsible for the cost of cleaning, repair or replacements as may be necessary as a result of extraordinary wear and tear, damage or misuse of aircraft or its contents caused by Customer, Customer's passengers and/or guests.

11. **Documentation.** Customer shall be solely responsible for ensuring that each passenger has all required documents for travel, including passports, visas and similar documentation, and shall be solely responsible for the cost of any delays or fines imposed caused by the failure of any passenger to produce required documentation upon request by competent authorities.

12. **Compliance with US DOT Regulations.** Customer, its agents, passengers and guests shall be deemed to have notice of, and shall comply in all respects with all applicable regulations of the United States Department of Transportation, and all other applicable laws, rules, or regulations issued by any governmental entity having jurisdiction over the flights to be operated and the BPA and the Standard Terms and Conditions (hereinafter and before "Charter Regulations"). Customer hereby represents and warrants that it will not hold out, offer or re-sell in any manner the transportation described in the BPA or these Standard Terms and Conditions. Customer acknowledges its understanding PJS does not hold authority as an Air Carrier from the United States Department of Transportation under 49 U.S.C. 41101 and 41102. Customer confirms PJS has not represented itself as a Direct Air Carrier nor an Indirect Air Carrier, but is acting solely as an agent on behalf of Customer in this transaction. Customer represents this group is a "Single Entity" as defined by the US Department of Transportation. PJS acts as agent for its clients in negotiating and facilitating transportation with licensed air carriers. PJS does not own or operate aircraft.

13. **Limitation of Liability.** International air transportation shall be, to the extent applicable, subject to the Warsaw Convention as amended, concerning the transportation by air of passengers, baggage and cargo.

14. **Indemnity.** Customer agrees to indemnify, defend, and hold PJS, its officers, employees and agents, harmless from all claims by any person or entity, for any loss, claim of damage or liability arising out of Customer's failure to comply with the BPA or these Standard Terms and Conditions; provided, however, in no event shall Customer be liable for any special, consequential or punitive damages under the BPA or these Standard Terms and Conditions.

15. **Insurance.** PJS agrees to only use aircraft Owner/Operator carriers that meet the following insurance requirements:

A. Owner/Operator of the aircraft will provide Customer with a certificate of insurance of owner/operator's aircraft liability insurance for bodily injury passenger liability, as well as non-passenger liability and including property damage liability with minimum limits of liability of $50,000,000.00 per customer /$50,000,000.00 aggregate. For every scheduled trip, PJS will endeavor to secure additional insured status to the benefit of Customer with respect to the foregoing insurance coverage, and shall provide a copy of such insurance to Customer prior to each departure.

B. For every scheduled trip, PJS shall endeavor to cause Owner/Operator of the Aircraft to agree to a waiver of subrogation of any and all claims made against Customer with respect to the lease/rental of the aircraft owner(s) aircraft. Acceptable notification is by specific endorsement and/or language onto Owner /Operators' liability certificate of insurance.

C. For every scheduled trip, PJS shall endeavor to cause Owner/Operator to assure pilot warranty – a stipulation stated in owner/operators' liability insurance policies that all pilots used by Owner/Operator meet the minimum policy qualifications and ratings that must be met by any pilot of the aircraft owner's aircraft.

D. For every scheduled trip, PJS shall use commercially reasonable efforts to cause Owner/Operator to provide 30 days written notice of any cancellation and/or material change in the aircraft owner's aircraft liability insurance policy, and shall use best efforts with respect to any material change in the applicable limits of coverage liability.

16. **Non - Assignability.** The BPA shall not be assignable by Customer without the prior written consent of PJS.

17. **Attorney's Fees.** In the event of any controversy, claim, or dispute between the parties to the BPA, arising or relating to the BPA, the Standard Terms and Conditions, and/or any flights covered under the foregoing, the prevailing party shall be entitled to recover reasonable attorney's fees and cost of suit.

18. **Choice of Law; Forum.** PJS and Customer agree that the subject matter of this Agreement and/or any flights covered under the said Agreement, will be governed by the laws of the State of New Hampshire to be made and performed entirely in that state, and to the extent applicable, federal laws of the United States. Any action relating to this Agreement in part or its entirety must be

brought in the Federal or State Courts located in New Hampshire and each party irrevocably consents to the jurisdiction of such courts.

**19. Severability.** Should any provision of the BPA or these Standard Terms and Conditions be held unenforceable or invalid for any reason, such provision shall be severable only to the extent of such unenforceability or invalidity, and the remaining portions thereof shall remain in full force and effect.

**20. Contingency Management & Interruption.** PJS' policy is to always have a minimum of two contingency plans in place for every flight to quickly recover from a mechanical, weather, or other Force Majeure. PJS tracks every aircraft 24 hours a day using a flight tracking system that identifies aircraft by their registration. PJS' operations center is in constant contact with each aircraft's dispatch throughout the duration of the flight. When unforeseen interruptions occur, PJS' dedicated client service team will work with Customer to analyze all contingency options available, and if necessary, to reposition the closest suitable aircraft. PJS may arrange for alternative transportation only with the express written authorization from Customer. If the aircraft is unable to complete any portion of the itinerary due to adverse weather, operational, or mechanical reasons, Customer shall be notified immediately and PJS shall credit to Customer all proposed charges with respect to the canceled charter flight legs. Flights operated on a delayed or subcontracted basis will not be credited.

**21. Force Majeure.** Neither Air Carrier nor PJS is responsible for delays, losses or damages of any kind caused, in whole or in part by Force Majeure, acts of war, terrorism, adverse meteorological conditions, mechanicals, air traffic control delays or other unforeseeable circumstances.

**22. Baggage.** Pursuant to FAA regulations, no unsafe items such as firearms, explosives, knives, or other flammable or dangerous goods may be carried on board or in passengers' baggage unless mutually agreed upon as an exception by both parties. Amount of luggage allowed on board is based on aircraft capacity as determined by the crew.

**23. Confidentiality.** PJS and Customer have executed a Non-Disclosure Agreement, which is hereby referenced and incorporated into this Agreement. From time to time, PJS may request of certain clients who are public figures for permission to use their relationship with PJS as a reference. All such requests are made in writing and require positive approval before such references can be made public by any team member.

**24. Counterparts.** The BPA may be executed in one or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any acceptance of this agreement is delivered by facsimile transmission, by e-mail stating acceptance, through an electronic signature, such confirmation shall create a valid and binding obligation of the customer with the same force and effect as if such were an original signature.