**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

PRIVATE JET SERVICES GROUP, LLC,

    plaintiff,

    v.

TWITTER, INC.,

    defendant.

Civil Action No.: 1:22-cv-00548-JL

**AMENDED COMPLAINT**

**(jury trial demanded on all claims so triable)**

(Filed by right "as a matter of course" pursuant to Fed. R. Civ. P. 15(a)(1)(B). Pursuant to Local Rule 15.1(c), "[w]hen a plaintiff files an amended complaint as of right … after the filing of a motion to dismiss for failure to state a claim, the motion to dismiss shall be automatically denied without prejudice and the defendant(s) shall respond to the amended complaint as may be appropriate under Fed. R. Civ. P. 12, within the time allowed under Fed. R. Civ. P. 15(a).")

    1.    Private Jet Services Group, LLC ("PJS") complains against Twitter, Inc. ("Twitter") for breach of contract, and in the alternative for breach of quasi-contract, and in the alternative for unjust enrichment, because Twitter refuses to pay $197,725 for private air charter passenger transportation services that it booked and accepted, and that PJS provided, for its executive on October 26 and 27, 2022.

Parties

    2.    PJS is Florida limited liability company with a principal place of business located at 1111 Lincoln Avenue, Suite 500, Miami Beach, Florida and with a recently former principal place of business located at 5 Batchelder Road, Seabrook, New Hampshire.

    3.    Twitter is a Delaware corporation with a principal place of business located at 1355 Market Street, San Francisco, California.

<u>Jurisdiction and Venue</u>

4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5.      The Court has personal jurisdiction over Twitter pursuant to NH RSA 510:4 because Twitter has transacted business within New Hampshire and because the parties agreed that "[a]ny action relating to [the Agreement that forms the basis for this action] in part or its entirety must be brought in the Federal or State Courts located in New Hampshire and each party irrevocably consents to the jurisdiction of such courts."

6.      Venue is proper in the District Court for the District of New Hampshire pursuant to 28 U.S.C. § 1391.

<u>Allegations</u>

7.      PJS is an air charter passenger transportation services broker.

8.      On June 24, 2020, PJS and Twitter agreed to and signed an Air Charter Services Blanket Purchase Agreement # 2020-4151 ("BPA").

9.      Pursuant to the terms and conditions of the BPA, Twitter is able to book and accept air charter passenger transportation services through PJS.

10.     Although the process set forth in the BPA was for one of Twitter's four "Designated Representatives" "[t]o book an aircraft" and then to "acknowledge acceptance of the terms set forth in the [Statement of Work] in writing or via e-mail in order to complete the reservation," in practice, Twitter's process of booking and accepting air charter passenger transportation services did not always follow the process set forth in the BPA including because Twitter employees other than its Designated Representatives booked and accepted air charter passenger transportation services, which PJS provided, and for which Twitter paid.

11.     For example, Twitter booked and accepted air charter passenger transportation services not in conformance with the BPA's Designated Representative process, including:

a.   for former Twitter executive Leslie Berland from Teterboro, New Jersey to San Francisco, California on October 27, 2020 with a return flight on October 29, 2020;

b.   for former Twitter executive Peiter Zatko from Teterboro, New Jersey to Santa Rosa, California on October 6, 2021 with a return flight the same day;

c.   for former Twitter Chief Financial Officer ("CFO") Ned Segal from San Jose, California to Los Angeles, California on November 7, 2021;

d.   for former Twitter Chief Executive Officer ("CEO") Parag Agrawal from San Jose, California to Teterboro, New Jersey on December 17, 2021;

e.   for former Twitter CEO Parag Agrawal from Philadelphia, Pennsylvania to Mountain View, California on January 2, 2022;

f.   for former Twitter CFO Ned Segal from Oakland, California to Akron, Ohio on February 17, 2022;

g.   for former Twitter CEO Parag Agrawal from Mountain View, California to State College, Pennsylvania on June 17, 2022 with a return flight on June 19, 2022;

h.   for former Twitter CEO Parag Agrawal from Mountain View, California to Hailey, Idaho on July 5, 2022 with a return flight on July 10, 2022; and

i.   for former Twitter CEO Parag Agrawal from Teterboro, New Jersey to Dallas, Texas back to Teterboro, New Jersey and finally to Mountain View, California on August 3, 2022.

      j.   Twitter paid PJS's invoices for each of the above air charter passenger transportation services that were booked and accepted not in conformance with the BPA's Designated Representative process, which demonstrates that booking and accepting air charter passenger transportation services not in conformance with the BPA's Designated Representative process does not constitute a material breach of the BPA.

12.    During the evening of October 25, 2022, via email and text, former Twitter employee Taylor DeLorenzo (who is not one of the four Designated Representative) booked and accepted air charter passenger transportation services for former Twitter executive Leslie Berland from Teterboro, New Jersey to San Francisco, California for the morning of October 26, 2022.

13.    PJS arranged, confirmed and provided to the Twitter executive the air charter passenger transportation services that Twitter had booked and accepted from Teterboro, New Jersey to San Francisco, California for the morning of October 26, 2022.

14.    On October 26, 2022, PJS invoiced Twitter $103,850 for its executive's air charter passenger transportation services from Teterboro, New Jersey to San Francisco, California, with payment due by November 2, 2022.

15.    During the afternoon of October 27, 2022, via email, former Twitter employee Cynthia Ancheta (who is not one of the four Designated Representative) booked and accepted air charter passenger transportation services for former Twitter executive Leslie Berland from San Francisco, California to Teterboro, New Jersey for the evening of October 27, 2022.

16.     PJS arranged, confirmed and provided to the Twitter executive the air charter passenger transportation services that Twitter had booked and accepted from San Francisco, California to Teterboro, New Jersey for the evening of October 27, 2022.

17.     On October 27, 2022, PJS invoiced Twitter $93,875 for its executive's air charter passenger transportation services from San Francisco, California to Teterboro, New Jersey, with payment due by November 3, 2022.

18.     Twitter's October 26, 2022 and October 27, 2022 flights were booked and accepted separately, not as a round trip, and thus, they were priced as individual flights.

19.     Twitter's October 26, 2022 and October 27, 2022 flights were booked with fewer than twelve and four hours of notice, respectively, as an urgent need for Twitter's then-executive including with best in class airborne wifi capable of live streaming during the week of Twitter's well publicized acquisition by Elon Musk, and thus, the flights and services could not be interrupted, delayed or cancelled.

20.     Twitter did not timely pay either of PJS's invoices for the air charter passenger transportation services that PJS provided.

21.     On November 16, 2022, Twitter employee Marty O'Neill, "Head of Global Strategic Sourcing at Twitter" emailed PJS "informing [PJS] that Twitter is not liable for these expenses [*i.e.*, the invoices for the air charter passenger transportation services that Twitter had booked and accepted and that PJS had provided] and therefore will not be paying these invoices."  Mr. O'Neill explained Twitter's decision not to pay for the services that PJS had provided, writing that "[a]s you know only Designated Representatives listed in Exhibit A of the [BPA] are allowed to order services on behalf of Twitter."

22.     On November 16, 2022, former Twitter employee Taylor DeLorenzo replied to Twitter employee O'Neill's email, writing that: "Just wanted to send a quick note with regards to the outstanding invoice for PJS: Parag [Agrawal] *did* sign off on this expense (he was still CEO at the time of both flight purchases) for Leslie.  It was an urgent need the week the deal closed, and Leslie was the main person from Twitter liaising directly with Elon.  Additionally, I had been approving all of the PJS transactions prior to this one - all of which Twitter paid with no issue or mention of the below requirements.  Just wanted to share additional context here."

23.     On November 16, 2022, Twitter employee O'Neill replied to former Twitter employee DeLorenzo's email: "Thanks Taylor, appreciate the added context.  However, new management is not going to budge and while yes you had been requesting, it doesn't change the terms agreed to in the agreement.  If anything, legally we shouldn't have paid for when you made those requests or alternatively Private Jet Services could have cited breach of contract.  I know you're looking for a resolution but can't emphasize enough that new management wants to hold firm on this."

24.     According to former Twitter employee DeLorenzo's internal Twitter emails, the former CEO of Twitter, Parag Agrawal, approved the air charter passenger transportation services for Twitter's executive that it booked and accepted, and that PJS provided on October 26, 2022 and October 27, 2022.

25.     According to Twitter employee O'Neill's internal Twitter emails, the reason that Twitter now refuses to pay PJS's invoices for the services that PJS provided is because Twitter's "new management" has made a decision not to pay those invoices and "new management wants to hold firm on this."

**Count I**
**<u>Breach of Contract</u>**

26.     PJS incorporates all allegations in this Complaint as if restated in full herein.

27.     Twitter has breached the parties' contract by refusing to pay for the air charter

passenger transportation services that it booked and accepted for its executive and that PJS

provided on October 26, 2022 and October 27, 2022.

28.     PJS has been damaged by Twitter's breach of the parties' contract by refusing to

pay for the air charter passenger transportation services that Twitter requested for its executive

and that PJS provided on October 26, 2022 and October 27, 2022.

**Count II**
**<u>Breach of Quasi-Contract</u>**

29.     PJS incorporates all allegations in this Complaint as if restated in full herein.

30.     In New Hampshire, a valid claim in quantum meruit requires that: (1) services

were rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the

defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect

payment.  *Gen. Insulation Co. v. Eckman Const.*, 159 N.H. 601, 612 (2010).

31.     Air charter passenger transportation services were provided to Twitter by PJS on

October 26, 2022 and October 27, 2022, with the knowledge and consent of Twitter, under

circumstances that make it reasonable for PJS to expect payment.

32.     PJS has been damaged by Twitter's breach of the parties' quasi-contract by

refusing to pay for the air charter passenger transportation services that Twitter requested for its

executive and that PJS provided on October 26, 2022 and October 27, 2022.

**Count III**
**<u>Unjust Enrichment</u>**

33.     PJS incorporates all allegations in this Complaint as if restated in full herein.

34.     "Unjust enrichment is an equitable remedy, found where an individual receives "a benefit which would be unconscionable for him to retain." *Clapp v. Goffstown Sch. Dist.*, 159 N.H. 206, 210 (2009).  While "[i]t is a well-established principle that the court ordinarily cannot allow recovery under a theory of unjust enrichment where there is a valid, express contract covering the subject matter at hand. … [u]njust enrichment may be available to contracting parties where the contract was breached, rescinded, or otherwise made invalid, or where the benefit received was outside the scope of the contract." *Id.* at 210-11.

35.     At Twitter's request, air charter passenger transportation services were provided to Twitter by PJS on October 26, 2022 and October 27, 2022.  After receiving the benefit of the services that PJS provided, Twitter decided not to pay for the benefit of the services it received explaining retrospectively that the benefits conferred upon Twitter were in breach of the BPA and/or outside the scope of the BPA and/or in circumstances that made it unnecessary to pay for.

36.     PJS has been damaged by Twitter's unjust enrichment that would be unconscionable for it to retain by refusing to pay for the air charter passenger transportation services that Twitter requested for its executive and that PJS provided on October 26, 2022 and October 27, 2022.

## **PRAYERS FOR RELIEF**

37.     WHEREFORE, PJS respectfully requests that the Court:

A.  Enter judgment on all Counts;

B.  Award PJS all damages to which it is entitled;

C.  Award PJS its reasonable attorney's fees and litigation costs including as allowed by contract, statute and/or decisional law; and

D.  Grant such further relief as is necessary and proper.

Respectfully filed,

PRIVATE JET SERVICES GROUP, LLC,

By its attorneys,

SHAHEEN & GORDON, P.A.,

February 14, 2023

/s/ Timothy J. McLaughlin
Timothy J. McLaughlin (NH bar # 19570)
107 Storrs Street
P.O. Box 2703
Concord, NH 03302
(603) 617-3035
tmclaughlin@shaheengordon.com

### Certificate of Service

I certify that the foregoing filing is being served upon all counsel of record via the Court's CM/ECF system.

/s/ Timothy J. McLaughlin
Timothy J. McLaughlin